**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Curtis W. Smith, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | No. 04 CV 6717 |
| -vs- | ) | |
| | ) | JUDGE GEORGE W. LINDBERG |
| United States of America, | ) | |
| | ) | |
| Defendant/Respondent. | ) | |

**MEMORANDUM AND ORDER**

Curtis Smith ("petitioner"), currently a prisoner incarcerated at Fort Dix, New Jersey,

moves this court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence upon

the ground that the sentence was imposed in violation of the Constitution or laws of the United

States. The motion is denied for the reasons discussed below.

This court generally adopts the statement of facts laid out by the Seventh Circuit in

*United States v. Smith*, 332 F.3d 455 (7th Cir. 2003), supplementing it where necessary with

facts from the briefs of petitioner and the United States of America (the "government"). In

November 2001, Hirschbach Motor Lines ("Hirschbach") hired petitioner, a licensed commercial

truck driver, to transport a load of toys from Massachusetts, to a Wal-Mart store in Iowa.

Petitioner picked up the toys which he was to transport in a trailer owned by Hirschbach. He

used a Hirschbach owned tractor to haul the trailer (the tractor and trailer will be referred to as

the "truck"). The cargo never arrived at its planned destination because petitioner pulled off the

road at various points along his route and sold toys from the back of the truck. He was

apprehended in Bridgeview, Illinois on November 20, 2001, after a local resident called police to

report petitioner's activity. Petitioner was more than two weeks late for the scheduled delivery

at the Wal-Mart in Iowa; Hirschbach had not been able to contact him because shortly after departing he had disabled the GPS and text-messaging systems installed in the truck.

On March 29, 2002 petitioner pled guilty based on the above facts to a one-count indictment charging him with stealing goods valued at more than $1,000 being shipped interstate in violation of 18 U.S.C. § 659. At sentencing, which occurred on September 11, 2002, petitioner contested two issues under the United States Sentencing Guidelines (the "Guidelines"): (i) the loss amount for purposes of calculating the offense level increase pursuant to Guideline § 2B1.1(b)(1)(E); and (ii) whether petitioner used a "special skill" which significantly facilitated the commission or concealment of the offense pursuant to Guideline § 3B1.3. This court resolved both of those issues against petitioner. The court determined that the amount of loss should include the value of the truck as well as the contents, a total of approximately $111,438. The court accepted the government's recommendation to depart upward three levels because petitioner's criminal history category of VI under-represented his criminal past and the likelihood for recidivism. The court enhanced petitioner's sentence an additional two levels according to Guideline § 3B1.3 because it found that the theft was facilitated by special skill and training, namely petitioner's skill in driving commercial trucks. Petitioner was credited with a two-level reduction in his sentence for acceptance of responsibility. The court imposed a special condition on petitioner's period of supervised release, ordering him to relinquish his commercial driver's license and refrain from being employed as a truck driver. Finally, petitioner was ordered to pay $51,000 in restitution, representing the value of the toys missing at the time the truck was recovered by law

enforcement. All of this added up to 63 months in prison and three years of supervised release, plus restitution.

Petitioner took a direct appeal to the Seventh Circuit. *See United States v. Smith*, 332 F.3d 455 (7th Cir. 2003). On direct appeal he argued that this court erred in applying the Guidelines in four specific ways:

> On appeal, Smith contends that the district court erred in including the value of the [truck] in the amount of the theft loss, that the court was obliged to grant a three-level rather than a two-level reduction for acceptance of responsibility under the circumstances, that the special condition of barring him from driving a truck was an excessive deprivation of liberty, and that the court erred in finding that truck driving is a special skill that significantly facilitated the crime.

*Id.* at 457. The Seventh Circuit remanded, instructing this court to correct its two-level reduction for acceptance of responsibility because Petitioner was in fact entitled to a three-level reduction. This court was also instructed on remand, to clarify the special conditions of supervised release. Petitioner was resentenced in accordance with the Seventh Circuit's opinion on October 21, 2003 to 57 months imprisonment. Petitioner did not appeal from the amended sentencing order.

On October 21, 2004, petitioner filed this motion, collaterally attacking his sentence under 28 U.S.C. § 2255. Petitioner raises three arguments. First, he attacks the merits of the court's application of the Guidelines, arguing that the court incorrectly applied the Guidelines to the facts of his case. Second, he argues that his rights under the Fifth and Sixth Amendments to the United States Constitution were violated when the court based his sentence, in part, on Guideline calculations based on fact-finding by the court under a preponderance of evidence standard, rather than by a jury by proof beyond a reasonable doubt (the "*Booker/Blakely* argument"; *see United*

*States v. Booker*, 543 U.S. 296 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004)).  Third, he

argues that he received ineffective assistance of counsel both from his attorney in district court

and from his attorney on appeal, which amounted to a violation of his rights guaranteed by the

Sixth Amendment to the Constitution.  The court addresses these arguments in turn.

First, petitioner argues that the district court misapplied the Guidelines.  This argument

fails because § 2255 is not the proper vehicle to make the argument.  Collateral relief under §

2255 is available if any legal error in taking a prisoner's guilty plea or sentencing him subsequent

to that plea was "jurisdictional, constitutional, or is a fundamental defect which inherently results

in a complete miscarriage of justice."  *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992)

(*quoting Haase v. United States*, 800 F.2d 123, 126 (7th Cir. 1986)).  The Seventh Circuit and the

Supreme Court have "emphasized [over and over] the difference between direct appeal and

collateral attack."  *Scott v. United States*, 997 F.2d 340, 341 (7th Cir. 1993).  "A section 2255

motion is neither a recapitulation of nor a substitute for a direct appeal."  *Belford v. United States*,

975 F.2d 310, 313 (7th Cir. 1986).

> As a result, there are three types of issues that a section 2255
> motion cannot raise: (1) issues that were raised on direct appeal,
> absent a showing of changed circumstances; (2) nonconstitutional
> issues that could have been but were not raised on direct appeal;
> and (3) constitutional issues that were not raised on direct appeal,
> *unless* the section 2255 petitioner demonstrates cause for the
> procedural default as well as actual prejudice from the failure to
> appeal.

*Id.* (emphasis in original).

Petitioner's arguments as to the court's misapplication of the Guidelines each fall under

either the first or the second category of issues that cannot be raised on a section 2255 motion.

On direct appeal Petitioner made four arguments that this court misapplied the Guidelines. *See supra* p. 3. Because the Seventh Circuit already considered the merits of those arguments, this court is not at liberty to reconsider them. As the Court said in *Scott*, "[o]ne full and fair opportunity to make arguments under the Guidelines–at sentencing and on direct appeal–is enough." 997 F.2d 340, 342 (7th Cir. 1993). Petitioner has not pointed to any changed circumstances that would allow this court to reexamine the opinion of the Seventh Circuit. The only changed circumstance petitioner points to is the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). The court will address Petitioner's *Booker/Blakely* argument separately.

Petitioner also makes an argument attacking the court's application of the Guidelines that he did not make on direct appeal. He argues for the first time that the court should not have accepted the government's recommendation to depart upward because petitioner's history did not reflect the seriousness of past offenses and the likelihood for recidivism. Ordinarily a court cannot consider nonconstitutional issues on a section 2255 motion that could have been but were not raised on direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Petitioner does not explain his failure to raise this argument either before the district court or on direct appeal, other than by stating that "defendant[']s counsel considered it kind of a useless venture. The Blakely [sic] ruling opens the door." This argument is not a constitutional one, but simply a claim that given the facts of petitioner's case, the court erred by departing upward. Petitioner does not meet the very high "cause and actual prejudice" standard required to review the issue at this time. *See e.g., Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). This

argument must therefore fail.

Second, petitioner argues that the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004) grants him a right to relief under section 2255. Although petitioner states in response to the government's reply brief that he would "categorically deny the government[']s contention that [he] utilized the Booker decision. . . at any point in his motion" the court considers his argument under both *Blakely* and *Booker* since *Booker* clarifies and builds on the line of cases of which *Blakely* is a part, and the argument under the two cases is essentially the same.

In *Apprendi v. New Jersey*, the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). In *Blakely v. Washington*, the Court reaffirmed the *Apprendi* rule and clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. 296, 303 (2004) (*citing Ring v. Arizona*, 536 U.S. 584, 602 (2002)) (emphasis in original).

In *United States v. Booker*, the Court extended its reasoning in *Blakely* to the Federal Sentencing Guidelines, and reaffirmed the basic holdings of *Apprendi* and *Blakely*. 543 U.S. 220, 243-244. It said that application of the Guidelines based on facts found by a judge under a preponderance of the evidence standard violates the Sixth Amendment *only* when the defendant is sentenced under a *mandatory* guidelines scheme. *Id.* at 233 (emphasis added). The Court stated, "[i]ndeed everyone agrees that the constitutional issues presented by these cases would

have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges. . . ." *Id.* In the remedy opinion of *Booker* the Court severed and excised the portions of the Guidelines that made them mandatory. *Id.* at 245 (Breyer, J.). After *Booker* it is unconstitutional for a judge to enhance a defendant's sentence based on facts found by the judge by a preponderance of the evidence under a *mandatory* sentencing scheme.

The crux of petitioner's argument is that he was sentenced under the then-mandatory Guidelines and his sentence was in fact enhanced based on facts found by a judge by a preponderance of the evidence. He points out several findings of fact that the court made that he did not admit in his plea agreement: (i) that the value of loss exceeded the amount stated in the plea agreement; (ii) that petitioner used his "special skill" as a truck driver to commit the crime; (iii) that petitioner's criminal history did not reflect the seriousness of his past offenses; and (iv) the necessity of the special conditions of supervised release. Even though petitioner is correct that he was sentenced under a mandatory scheme based on facts found by a judge by a preponderance of the evidence in violation of the Sixth Amendment, his argument still fails. Petitioner has overlooked the very important fact that *Booker* cannot be applied retroactively and he is therefore not able to benefit from the rule established by the *Booker* line of cases.

*Booker's* holdings"–both the Sixth Amendment holding and [the] remedial interpretation of the Sentencing Act–[apply] to all cases on direct review." *United States v. Booker*, 543 U.S. 220, 268 (2005). The Seventh Circuit has been consistent in holding that *"Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005."

*E.g., McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005). Petitioner was sentenced on September 11, 2002. The Seventh Circuit remanded to this court for resentencing that occurred on October 21, 2003. Petitioner did not petition the Seventh Circuit for direct review of the order resentencing him and his case became final well before the Supreme Court decided *Blakely* on June 6, 2004 or decided *Booker* on January 12, 2005. As in *McReynolds*, petitioner's "sentence[ ] became final well before *Booker* was issued, and its approach therefore does not govern [this] collateral proceeding[ ]." 397 F.3d 479, 481 (7th Cir. 2005).

Curiously, while disclaiming any reliance on *Booker*, petitioner states in his reply brief that he "filed his 2255 motion on October 19, 2004, [and] the Booker [sic] decision was not published until January 2005, thereby making utilization of this case cite an impossibility." He fails however to explain how he can rely on either *Blakely* or *Booker* when his sentence became final before the Court decided *either* of those cases. Because the Supreme Court's rule from the line of cases culminating in *Booker* does not apply retroactively to cases that became final before *Booker* was decided, petitioner's argument fails.

Third and finally, petitioner argues that he received ineffective assistance of counsel in violation of rights guaranteed by the Sixth Amendment to the Constitution from both his trial counsel, Robert L. Edwards, and his appellate counsel, Gareth G. Morris. He bases this argument on the assertions that: (i) both his trial and appellate counsel failed to challenge the submission of certain documents by the government; and (ii) both his trial and appellate counsel failed to protect his Sixth Amendment rights because the *Booker/Blakely* argument was not timely raised.

Despite having not raised the issue on direct appeal, collateral attack under Section 2255 is the proper vehicle to raise a claim of ineffective assistance of counsel.

> In *Massaro*, the Supreme Court concluded that ineffective-assistance claims should not be subject to "the usual procedural default rule," and held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."

*Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) (*citing Massaro v. United States*, 538 U.S. 500, 504 (2003).

Ineffective assistance of counsel claims must meet the standard laid out in *Strickland v. Washington*. 466 U.S. 668 (1984). To show ineffective assistance of counsel under *Strickland*, petitioner must show: (1) "counsel's representation fell below an objective standard of reasonableness" (the performance prong); and (2) "there is a reasonable probability that, but for counsel's professional error, the result of the proceeding would have been different" (the prejudice prong). *Belford v. United States*, 975 F.2d 310, 314 (7th Cir. 1992) (*quoting Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). *Strickland* tolerates a "wide range of professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The Supreme Court has not laid out any particular set of requirements for counsel because "[a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* Petitioner must overcome the strong assumption that counsel's performance was reasonable under the circumstances. *Id.* Furthermore, even if petitioner could meet the first prong by showing deficient performance, an

error by counsel "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Counsel's failure to object to certain documents submitted by the government does not amount to ineffective assistance of counsel under the applicable standard. Petitioner's brief states, "[b]oth attorneys failed to adequately challenge the submission of documents which infer differential pricing practices, as a result enhancing the loss value of the stolen goods. . . ." The essence of this argument is that the court improperly relied on the retail value of the goods (what Wal-Mart claims it would have eventually sold them for) rather than the wholesale value of the goods as reflected by the bill of lading.

The court need not address whether counsel's failure to object was objectively unreasonable under the performance prong of the *Strickland* test because even if it was, petitioner cannot show that he was prejudiced by the alleged failure. Petitioner states that the correct value of the stolen goods was $42,000 as reflected by the bill of lading. The court however, calculated petitioner's sentence based on the value of the goods being approximately $64,000 (the retail value). The total value of loss was calculated by adding the value of the stolen goods and the value of the stolen truck. The Seventh Circuit confirmed that the district court properly calculated the amount of the loss to include the truck as well as the goods. *United States v. Smith*, 332 F.3d 455, 458 (7th Cir. 2003). The value of the truck stolen by petitioner was found to be $47,000. Petitioner's base offense level was increased because the "loss" for sentencing purposes was more than $70,000. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(1). Even if counsel had successfully objected to the "differential pricing practice" that

petitioner refers to and the court had instead valued the stolen toys at $42,000, when added to the value of the truck, the total amount of loss would still have been more than $70,000. Regardless of which of the two suggested values of the toys was used, petitioner's base offense level would have been the same. Petitioner was not prejudiced by counsel's failure to object to documents which established the value of the stolen goods to be $64,000 rather than $42,000 and this argument therefore fails.

Counsel's failure to raise the *Booker/Blakely* argument also does not amount to ineffective assistance of counsel. Petitioner apparently believes that counsel was obligated to argue at sentencing and/or on direct appeal that petitioner's sentence violated his Sixth Amendment rights. While counsel *could* have made this argument, counsel is considered ineffective only if he fails to raise an argument that there is a "reasonable probability" that defendant would have won. *Cabello v. United States*, 884 F. Supp. 298, 302 (N.D. Ind. 1995) (*citing Belford v. United States*, 975 F.2d 310, 314 (7th Cir. 1992)). At the time petitioner was sentenced and at the time the Seventh Circuit ruled on his direct appeal it was not obvious under established precedent that petitioner had a Sixth Amendment argument. Petitioner was sentenced in September 2002, the Seventh Circuit issued the opinion on his direct appeal in June 2003 and this court resentenced petitioner in November 2003. It was not until almost a year later that it became clear that petitioner would have had a valid Sixth Amendment argument: the Supreme Court decided *Blakely* in June 2004; *Booker* was not decided until January 2005.

Additionally, the Seventh Circuit has stated on several occasions (albeit in dicta) that failure by counsel to anticipate this type of Sixth Amendment argument does not amount to

ineffective assistance. *United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001) ("Nor does he contend that counsel was ineffective for failure to anticipate *Apprendi*; no such argument would be tenable."); *Fuller v. United States*, 398 F.3d 644, 650 (7th Cir. 2005) (Petitioner "does not argue that his trial counsel was ineffective for failing to anticipate *Blakely v. Washington*,. . . and *United States v. Booker*, . . . and object on Sixth Amendment grounds to the trial court's imposition of sentencing enhancements. Indeed, no such argument would be tenable.") (internal quotations omitted). This court need not reach the prejudice prong as counsel's performance was not unreasonable under the performance prong. Petitioner's claim of ineffective assistance of counsel based on failure to raise the *Booker/Blakely* argument fails.[1]

**ORDERED:** Petitioner's motion is denied in its entirety.

ENTER:

GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: April 17, 2006

---

[1] By holding that petitioner's counsel was not constitutionally *required* to make a *Booker/Blakely* type argument either at sentencing or on direct appeal, this court does not hold that no basis for making the argument existed or that counsel *could not* have made such an argument notwithstanding the Rule 11 requirement that counsel not make "frivolous" arguments. *See* Fed. R. Civ. P. 11(b)(2). In *United States v. Smith*, the court pointed out that "defendants have been making *Apprendi*-like arguments ever since the Sentencing Guidelines came into being. . . ." 241 F.3d 546, 548 (7th Cir. 2001). In fact, the Supreme Court had touched on similar themes as early as 1970. *Id*. (*citing In re Winship*, 397 U.S. 358 (1970)). While counsel was at least on constructive notice that grounds (even if tenuous) to make a similar argument existed, the failure to do so does not render counsel constitutionally ineffective.